11-3525 (L)
P.K. & T.K. v. New York City Dep't of Educ.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of May, two thousand thirteen.

Present:     JOSÉ A. CABRANES,
             ROBERT D. SACK,
             SUSAN L. CARNEY,
                 *Circuit Judges.*

---

P.K. and T.K., on behalf of S.K.,

   *Plaintiffs-Appellees- Cross-Appellants,*

    v.         Nos. 11-3525(L),
                11- 3633(XAP)

New York City Department of Education, (Region 4),

   *Defendant-Appellant-Cross-Appellee.*

---

Appearing for Plaintiffs-Appellees-Cross-Appellants: GARY S. MAYERSON (Tracey Spencer Walsh, Maria C. McGinley, *on the brief*), Mayerson & Associates, New York, N.Y.

Appearing for Defendant-Appellant-Cross-Appellee: JANE L. GORDON (Edward F.X. Hart, Lesley Berson Mbaye, *on the brief*), *for* Michael A. Cardozo, Corporation Counsel of the City of New York, New York, N.Y.

Appeal from the United States District Court for the Eastern District of New York (Sterling Johnson, *Judge*), **ON CONSIDERATION WHEREOF,** it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the judgment of the District Court be and it hereby is **AFFIRMED**.

Defendant-appellant New York City Department of Education (Region 4) (the "Department") appeals from the district court's award of summary judgment in favor of plaintiffs, P.K. and T.K., on their claims (1) alleging that the Department denied their disabled child, S.K., a free appropriate public education ("FAPE") in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*; and (2) seeking reimbursement for the cost of private school tuition for the 2008-2009 school year. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision.

## I. Background

S.K. was born in October 2003. In May 2006, she was diagnosed with autism. During the 2007-2008 school year, S.K. attended preschool at the Interdisciplinary Center for Child Development in Queens. There, she was placed in an 8:1:3 classroom (meaning that the classroom-staffing profile was eight students assigned to one teacher and three classroom aides). She also received individualized speech and language therapy at school. Outside of school, S.K.

received state-funded 1:1 "Applied Behavioral Analysis" ("ABA") therapy for ten hours every week.[1]

On March 31, 2008, a Department Committee on Special Education ("CSE") met to develop, pursuant to the IDEA, see 20 U.S.C. § 1412(a)(1)(A), an individualized education plan ("IEP") for S.K. for the 2008-2009 school year – when she would be entering kindergarten. Among other things, S.K.'s IEP provided that she would attend a 6:1:1 classroom. The IEP also provided that S.K. would receive (1) three, thirty-minute sessions weekly of individual occupational therapy, and (2) three, thirty-minute sessions weekly of language and speech therapy, conducted in a group setting. The IEP did not provide for ABA therapy; nor did it provide for any individualized instruction or therapy of any type, aside from occupational therapy as a related service.[2] Dissatisfied with the IEP, S.K.'s parents decided to enroll her in a private school that, among other things, employed ABA therapy.

On May 12, 2008, P.K. and T.K. filed a formal "Demand for Due Process" to challenge the adequacy of S.K.'s IEP. See 20 U.S.C. § 1415(f) (describing parents' right to an "impartial due process hearing"). In the demand, S.K.'s parents asserted that S.K.'s IEP was both substantively and procedurally

---

[1] ABA is an "intensive one-on-one therapy that involves breaking down activities into discrete tasks and rewarding a child's accomplishments." R.E. v. New York City Dep't of Educ., 694 F.3d 167, 176 (2d Cir. 2012) (internal quotation marks omitted). ABA instructors "use[ ] careful behavioral observation and positive reinforcement or prompting to teach each step of a[n appropriate] behavior." M.H. v. New York City Dep't of Educ., 685 F.3d 217, 226 n.5 (2d Cir. 2012) (internal quotation marks omitted).

[2] The IDEA defines "related services" as "developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from special education. . . ." 20 U.S.C. § 1401(26).

3

inadequate, and that equitable considerations counseled in favor of a full reimbursement by the school district for the anticipated cost of S.K.'s private school tuition for 2008-2009.

The parents' claims were first considered by an Impartial Hearing Officer ("IHO"),[3] who was appointed by the Department.  See M.H., 685 F.3d at 224. The IHO concluded that the Department failed to establish that S.K. was provided a FAPE.  To support this conclusion, the IHO pointed primarily to the following perceived shortcomings of the IEP: (1) the Department's failure to order appropriate speech and language therapy in accordance with state regulations; (2) the IEP's failure to provide sufficient parent training and counseling in accordance with state regulations; and (3) the Department's failure to develop a Functional Behavioral Assessment ("FBA") and resulting Behavior Intervention Plan ("BIP") despite S.K.'s interfering behaviors.[4]

The Department appealed to the State Review Officer ("SRO"), who reversed the IHO's decision.  First, the SRO concluded that S.K. would receive sufficient speech and language therapy to provide her a FAPE in the proposed placement.  Although he acknowledged that the IEP offered only three, thirty-

---

[3]  The IHO is the hearing officer who presides at the IDEA-mandated "impartial due process hearing," 20 U.S.C. § 1415(i)(2)(A), hosted by the local district – in this case, the New York City Department of Education.  In New York State, the IHO's decision may be appealed to a State Review Officer.  M.H., 685 F.3d at 224.

[4]  An FBA involves a determination of "why the student engages in behaviors that impede learning and how the student's behavior relates to the environment."  8 N.Y.C.R.R. § 200.1(r).  A BIP is a "plan that is based on the results of a[n FBA] and, at a minimum, includes a description of the problem behavior, global and specific hypotheses as to why the problem behavior occurs and intervention strategies that include positive behavioral supports and services to address the behavior."  Id. § 200.1(mmm).

minute sessions of speech and language therapy weekly in a group setting, contrary to regulations then in place requiring "instructional services . . . to meet the individual language needs of a student with autism for a minimum of 30 minutes daily in groups not to exceed two, or 60 minutes daily in groups not to exceed six," Joint Appendix ("J.A.") at 671 (quoting 8 N.Y.C.R.R. § 200.13(a)(4) (2007)), he observed that the teacher at the proposed placement school testified she provided frequent individual language instruction in the form of gestures, picture symbols, and sign language, supplementing the program described by the IEP. Additionally, the SRO noted, "the CSE felt five [speech and language therapy sessions weekly] would be too much [time] out of the classroom so [the CSE] offered three [sessions weekly], which they felt could address [S.K.'s] needs given the fact that she would be in the classroom also increasing her communication skills." J.A. 671-72 (internal quotation marks and brackets omitted). The SRO concluded that "[u]nder the circumstances, although not specifically delineated on the student's IEP, as a whole, the hearing record reflects that the student's program, including specific speech-language therapy and in-class language instruction, were appropriate to meet the student's individual speech-language and communication needs." Id. at 672.

Second, the SRO determined that the "program recommended by the . . . CSE provided for adequate parent counseling and training." Id. He acknowledged that "parent counseling and training was not specifically set forth in the . . . IEP," although required by New York regulations. Id. at 673. Nonetheless, based on testimony from the Department's "unit coordinator" that the recommended school "had a six-week parent training program that addressed behavior," an active

5

Parent Teacher Association, and parent and sibling support groups, the SRO found that the Department's "failure to include [parent counseling and training] on the IEP[,] did not procedurally or substantively[] result in the denial of a FAPE." Id. at 672-73.

Third, as for the omission of an FBA and BIP from the IEP, the SRO found "no persuasive evidence in the hearing record that the student demonstrated a need for either an FBA or a BIP." Id. at 670.

On April 9, 2009, S.K.'s parents filed a complaint in the United States District Court for the Eastern District of New York seeking relief from the SRO's decision. See 20 U.S.C. § 1415(i)(2)(A) (providing that any party aggrieved by a decision may challenge the decision in state or federal court).

Upon review of the record and arguments, Chief Magistrate Judge Gold recommended that the district court hold, *inter alia*, that the IEP did not provide S.K. with a FAPE. See P.K. ex rel. S.K. v. N.Y.C. Dep't of Educ. (Region 4), 819 F. Supp. 2d 90 (E.D.N.Y. 2011). The Magistrate Judge deferred to the SRO's determination that S.K. did not require an FBA, id. at 107-08, but found the IEP inadequate nonetheless because of (1) its failure to provide adequate speech therapy and parent training, and (2) its termination of ABA therapy, which neither the IHO nor the SRO had addressed expressly, id. at 108-15. The Magistrate Judge noted that "the evidence demonstrates that S.K. required substantial related services and greater individualized attention in order to make meaningful progress and receive an educational benefit from her schooling." Id. at 111.

The district court adopted the Magistrate Judge's recommendations in full. Id. at 95-96.

## II. Intervening Change in Law

In the interim between the issuance of the district court's decision and the present appeal, we decided two cases that bear upon our resolution of this case. See R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167 (2d Cir. 2012); M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217 (2d Cir. 2012).

In M.H., we emphasized that federal courts reviewing administrative decisions in the IDEA context "must give due weight to these proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." 685 F.3d at 240 (internal quotation marks omitted). We explained that our review of state administrative decisions "requires a more critical appraisal of the agency determination than clear-error review[,] but nevertheless falls well short of complete *de novo* review. In the course of this oversight, the persuasiveness of a particular administrative finding, or the lack thereof, is likely to tell the tale." Id. at 244 (internal quotation marks and alterations omitted).

We also explained that where, as here, the SRO and IHO disagree, "reviewing courts are not entitled to adopt the conclusions of either state reviewer according to their own policy preferences or views of the evidence; courts must defer to the reasoned conclusions of the SRO as the final state administrative determination." Id. at 246. But in cases where "the SRO's determinations are insufficiently reasoned to merit that deference . . . it is entirely appropriate for the

7

court . . . to consider the IHO's analysis, which is . . . informed by greater educational expertise than that of judges." Id.

Three months after our decision in M.H., we addressed in R.E. the appropriateness of considering "retrospective testimony" in evaluating whether an IEP provides a FAPE. R.E., 694 F.3d at 174. Retrospective testimony is "testimony that certain services not listed in the IEP would actually have been provided to the child if he or she had attended the school district's proposed placement." Id. at 185. We adopted "the majority view that the IEP must be evaluated *prospectively* as of the time of its drafting and therefore . . . retrospective testimony that the school district would have provided additional services beyond those listed in the IEP may not be considered in a Burlington/Carter proceeding."[5] Id. at 186 (emphasis added). This view rests on the recognition that "parents must have sufficient information about the IEP to make an informed decision as to its adequacy prior to making a placement decision." Id. At the same time, we elaborated that,"[w]hile testimony that materially alters the written plan is not permitted, testimony may be received that explains or justifies the services listed in the IEP." Id.

---

[5] "Under New York [law], the local school board bears the initial burden of establishing the validity of its plan at a due process hearing. If the board fails to carry this burden, the parents bear the burden of establishing the appropriateness of their private placement and that the equities favor them. This framework is known as the Burlington/Carter test." R.E., 694 F.3d at 184-85 (internal citations omitted).

8

## III. Analysis

Applying these principles to the case before us, we conclude – without regard to educational method – that the IEP was substantively inadequate because it failed to provide sufficient 1:1 instruction.[6]

The IEP's inadequacy in this regard is particularly stark when considering its provision of speech and language therapy. The IEP provided that S.K. would receive only three thirty-minute speech therapy sessions in groups of three every week, in clear violation of then-applicable state regulations requiring that autistic children receive speech therapy "for a minimum of 30 minutes daily in groups not to exceed two, or 60 minutes daily in groups not to exceed six." See 8 N.Y.C.R.R. § 200.13 (a)(4) (2007). The SRO also did not point to any evidence in the record to support his position that S.K. could continue to progress without at

---

[6] The Department argues that plaintiffs have not exhausted their claim that the IEP provided insufficient 1:1 services. This flaw in the IEP, however, was fairly identified by plaintiffs in their due process complaint, which listed ten specific problems with S.K.'s IEP for the 2008-2009 school year. The failure to provide sufficient 1:1 services is not among the concerns specifically enumerated by plaintiffs, but the list alleges that "[t]he related speech and language therapy offered to [S.K.] is not sufficient" and, in broad language, that the District "impermissibly followed district 'policy' and administrative convenience in denying [S.K.]" a FAPE, J.A. 443 – phrases that we think, fairly read along with the rest of the complaint, encompass the parents' concern about the adequacy of the IEP's provision for individual care. Moreover, the due process complaint urges that S.K. be provided with 1:1 ABA services as a "proposed solution" to the denial of a FAPE. Id. at 444. The statutory language providing that "[t]he party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice," 20 U.S.C. § 1415(f)(3)(B), allows parties to argue that an IEP was inadequate for any reason that is raised in the complaint. The statute does not require that these reasons be spelled out in a specific section of the complaint when they are clearly raised elsewhere – for example, in this case, in the section discussing remedies for the alleged denial of a FAPE. In fact, generally, "the same considerations and criteria that apply in determining whether the School District's placement is appropriate should be considered in determining the appropriateness of the parents' placement [for the child]." Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 364 (2d Cir. 2006).

least some 1:1 speech and language therapy. To the contrary, the record contains evidence that this was precisely what S.K. required to progress.[7]

Moreover, much of the evidence relied on by the SRO to support his view that the IEP was adequate was "retrospective testimony." For example, the SRO concluded that the IEP provided adequate speech and language therapy in large part because the teacher in S.K.'s proposed placement classroom testified that she provided frequent language instruction in the form of gestures, picture symbols, and sign language. This testimony may accurately reflect the care and individual instruction that would be available to S.K. at her proposed placement, but it has no bearing on the evaluation of S.K.'s IEP. For the reasons discussed in R.E., neither the state review officers nor our Court may justify the CSE's IEP based on evidence about the language services S.K. would *actually* receive in her public school placement. Parents are entitled to rely on the IEP for a description of the services that will be provided to their child.

Once retrospective testimony is removed from the balance, the "preponderance of the evidence," 20 U.S.C. § 1415(i)(2)(C)(iii), supports the conclusion that S.K.'s IEP was insufficient because it failed to provide "special education and related services . . . reasonably calculated to enable the child to

---

[7] In February 2008, the McCarton Center for Developmental Pediatrics concluded that S.K.'s "overall communication skills [were] low," J.A. 493, and recommended "[s]peech/language therapy 5x 60 minutes weekly (1:1)." J.A. 495. The speech therapist who provided S.K. with 1:1 speech therapy three times a week during S.K.'s preschool education noted that S.K. benefitted from "repetition, visual cues and verbal prompts to facilitate her speech and language development," J.A. 510, and recommended "speech and language intervention 3 times weekly in a 1:1 ratio," J.A. 512. The CSE charged with crafting S.K.'s IEP had access to all of this evidence but decided, nonetheless, that group speech therapy would suffice.

receive educational benefits," <u>Gagliardo v. Arlington Cent. Sch. Dist.</u>, 489 F.3d 105, 107 (2d Cir. 2007) (internal quotation marks omitted).[8]  Furthermore, substantially for the reasons stated in the Magistrate Judge's Report and Recommendation, we conclude that the parents' proposed placement for S.K. was appropriate and that the equities favor full tuition reimbursement.  <u>P.K.</u>, 819 F. Supp. 2d at 115-18.

We have considered the Department's remaining arguments and find them to be without merit.  Accordingly, the judgment of the district court is **AFFIRMED**.  Plaintiffs' cross-appeal is **DISMISSED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[8] As discussed by the Magistrate Judge, the IEP's failure to provide adequate 1:1 services extended outside the related-services realm.  S.K.'s mother, S.K.'s speech therapist, and the experts from the McCarton Center emphasized S.K.'s need for individualized care in testimony and documents submitted to the IHO.  Even the school psychologist consulting on S.K.'s CSE testified that expert opinion as to S.K.'s need for more one-to-one speech therapy than provided in the IEP was a "very strong consideration," J.A. 387, and agreed that S.K. "at least needed to have some meaningful level of 1:1 instruction during the day," J.A. 392.  Nonetheless, the IEP did not specify that S.K. would receive *any* individualized therapy, aside from occupational therapy provided as a related service.  As we held in <u>R.E.</u>, S.K.'s parents were entitled to rely on the IEP's characterization of the services available to S.K. in deciding whether to place S.K. in a private school setting.  In fact, the absence of sufficient 1:1 care in S.K.'s proposed placement was cited by S.K.'s mother as one of the most important considerations in deciding to enroll her in a private school.